(25 App. Div. 376.)

### TIFFT et al. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. CITY IMPROVEMENT—NOTICE INVITING BIDS.
    A charter provision that the city shall not contract with one to make an improvement till publication, in five successive numbers of the official paper, of notice inviting sealed bids for the work, pursuant to plans and specifications on deposit in a designated office, is not satisfied by publication, on the first six days of the month, of a notice stating the plans could be seen on and after the fourth day thereof, and that bids would be received till 10 a. m. of the eighth day; as, the seventh day being Sunday, the plans were on exhibition only three days, instead of at least five, as contemplated by the charter.

2. SAME—DESCRIPTION OF WORK.
    A charter provision forbidding a contract for improvement, to exceed $500, till publication of notice inviting bids to make the improvement, pursuant to plans in the office, is not complied with by a notice stating the work to be the removal of rock from a river, where part of the work, as shown by the plans and provided for by the contract, is the removal of earth, at an expense of over $500.

3. SAME—EFFECT ON ASSESSMENT OF WANT OF NOTICE.
    Failure to satisfy charter provision as to notice, by publication, for sealed bids for improvement, according to plans on exhibition for such length of time, vitiates assessment to defray costs of improvement under the contract.

4. RES JUDICATA.
    Judgment for plaintiff in an action against a city to recover an assessment paid, holding the assessment roll void, is not in rem, and therefore conclusive or competent evidence in an action by another against the city in which the same assessment roll is involved.

Appeal from judgment on report of referee.

Action by Marie L. Tifft, as administratrix of the estate of John V. Tifft, and others, against the city of Buffalo. Judgment for the plaintiffs on report of referee. Defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles L. Feldman, for appellant.
George Wadsworth, for respondents.

FOLLETT, J. This action was begun April 6, 1881, in the superior court of the city of Buffalo, to set aside an assessment confirmed March 23, 1874, and to recover $4,446.83 taxes paid on said assessment April 16, 1875, with interest from the date of payment. The assessment is sought to be set aside, and the amount paid in pursuance thereof recovered, on the following grounds: (1) That the notice of assessment roll was not published as required by section 5, tit. 6, c. 519, Laws 1870 (section 148, c. 105, Laws 1891). (2) That the original assessment roll was not signed by the assessors as required by section 7, tit. 6, c. 519, Laws 1870 (section 152, c. 105, Laws 1891). (3) That the assessors failed to mail notices of the assessment as required by section 8, tit. 6, c. 519, Laws 1870 (section 150, c. 105, Laws 1891). (4) That the notice of intention to order the work, to pay for which the assessment was subsequently levied, was not published as required by section 18, tit. 9, c. 519, Laws 1870 (section 407, c. 105, Laws 1891). (5) That the notice inviting sealed proposals for doing the work, to pay for which the assessment was subsequently levied, was not published as required by section 19, tit. 9, c. 519, Laws 1870 (section 408, c. 105, Laws 1891). (6) That the notice of intention to do the work, the proposals therefor, and the order for doing the work, specified that rock was to be removed from the bed of the river, which was removed at an expense of more than $500, and that it was not advertised that earth was to be removed from the bed of the river; that earth was removed, pursuant to the specifications and contract, at an expense of more than $500, and the expenses of removing the earth were included in the assessment, in violation of section 19, tit. 9, c. 519, Laws 1870 (section 408, c. 105, Laws 1891). (7) That the assessment roll was on December 18, 1880, adjudged void by the superior court of the city of Buffalo in Rumsey v. City of Buffalo, which judgment was on May 15, 1882, affirmed by the general term of said court, and on October 21, 1884, by the court of appeals. 97 N. Y. 114.

By section 16, tit. 9, c. 519, Laws 1870 (Charter of the City of Buffalo), it was provided:

"Sec. 16. The city has the power to widen, straighten, enlarge, clear from obstructions, dredge and put and maintain in navigable condition, the Buffalo river, the Black Rock harbor, the lake, the basins, slips and other waters in the city, and to defray the expense, or any part of it, out of the general fund, or by local assessment."

This provision has ever since been continued, and is now a part of the charter of the city of Buffalo. Laws 1891, c. 105, § 405.

August 18, 1873, the common council of the defendant adopted the following resolutions:

"Resolved, that the common council of the city of Buffalo intend to order the rock removed from the Buffalo river between a line fifty feet westerly from and parallel to a line drawn as a straight extension of the westerly line of Alabama street and a line parallel to and one hundred and fifty feet westerly from a straight extension of the westerly line of Hamburg street, and to a distance of eighty-six feet from the northerly bank of said river, so as to create a depth of water equal to that produced by the excavations in said river in front of the Delaware & Hudson Canal Company's lands, lying immediately westerly of the said proposed improvement, and that the engineer

prepare plans, specifications and quantities, and advertise for proposals and report, and the city clerk cause this notice to be duly published; also resolved, that the expense of the improvement mentioned in the foregoing resolution be assessed upon the land fronting upon Buffalo river benefited by such improvement, in proportion to the benefits resulting thereto."

In 1873, 1874, and 1875, John V. Tifft, Sarah A. Gay, Mary A. Plimpton, Charles A. Whiting, and Louis W. Gay were the owners of a tract of land in the city of Buffalo with a frontage of 5,345 feet on Buffalo river. April 1, 1874, an assessment roll for the collection of $39,001.68 to pay the expenses "for removing rock from the Buffalo river, between a line fifty feet westerly from, and parallel to, a line drawn as a straight extension of the westerly line of Alabama street, and a line parallel to, and one hundred and fifty feet westerly from, a straight extension of the westerly line of Hamburg street to a distance of eighty-six feet from the northerly bank of said river," was delivered to the treasurer of the city. On this roll the plaintiffs were assessed for $4,446.83, which was paid by them April 16, 1875.

By the plaintiffs' fifth objection to the validity of the assessment, they assert that the notice inviting sealed proposals for doing the work, to pay for which the assessment was subsequently levied, was not published as required by section 19, tit. 9, c. 519, Laws 1870 (section 408, c. 105, Laws 1891), which provided:

"Sec. 19. The city shall not enter into a contract with any person for the doing or making of a work or improvement, at a price exceeding five hundred dollars, until they shall have published a notice in five successive numbers of the official paper inviting sealed proposals to do the work or make the improvement, pursuant to the plans, specifications or other proper description of the work or improvement on deposit in the office, to be specified in the notice, nor until the assessment therefor shall have been confirmed."

September 1, 2, 3, 4, 5, and 6, 1873, the following notice was published in the official paper:

"Engineer's Office, City of Buffalo.

"September 1st, 1873.

"Sealed proposals will be received at this office until 10 o'clock a. m., Monday, September 8th, 1873, for the following items of work, as set forth below. Plans, specifications, and quantities can be seen at this office on or after Thursday, September 4th, 1873. Every bid must specify the gross sum for the completion of the work bid for, and be accompanied with the bond required by law. For removing rock from Buffalo river between a line fifty feet westerly from, and parallel to, a line drawn as a straight extension of the westerly line of Alabama street, and a line parallel to, and one hundred and fifty feet westerly from, the straight extension of the westerly line of Hamburg street, and to a distance of eighty-six feet from the northerly bank of said river."

By the notice, the plans and specifications were on exhibition during only three week days,—September 4th, Thursday; 5th, Friday; and 6th, Saturday. September 7th was Sunday, and the bids were opened on Monday, September 8th, at 10 a. m. This was not a substantial compliance with the foregoing section, which contemplates that the plans and specifications should be on exhibition for at least five days. The statute requiring the publication of the notice is mandatory, and enacted for the purpose of securing the work to be done for the least possible price, and at the least expense to the taxpayers, and to protect them alike from the rapacity of contractors

and from official indifference. The result of giving inadequate notice was what might have been expected, and possibly was intended,—that but two proposals for doing the work were received, one for $39,000 and the other for $40,000,—and the contract was let to the lower bidder. Inadequate notice for doing public work facilitates combinations between bidders, to the detriment of taxpayers and of the city. The omission to publish this notice was a substantial and jurisdictional error, which vitiated the assessment subsequently made to defray the expense of the performance of the contract. In re Pennie, 108 N. Y. 364, 15 N. E. 611; White v. Bayonne, 49 N. J. Law, 311, 8 Atl. 295; Burke v. Turney, 54 Cal. 486; McCloud v. City of Columbus (Ohio) 44 N. E. 95; Wait, Engin. & Arch. Jur. § 135.

By the plaintiffs' sixth objection to the validity of the assessment, it is asserted that it was invalid because it embraced the cost of removing earth from the river, which amounted to more than $500, and no proposals were invited for doing such work, as provided by section 19, tit. 9, c. 519, Laws 1870, above quoted. The following facts in this connection were conceded on the trial, and found by the referee:

"(i) That said rock mentioned in said proceedings, and to pay for the removal whereof said assessment was made and confirmed as aforesaid, was the natural bottom of said Buffalo river; that the expense of removing said rock exceeded $500. (j) That said work or improvement, and said contract, plans, and specifications, included the removal of a large quantity of earth from the bottom of said Buffalo river, and that the expense of removing said earth exceeded the sum of $500; that the expense of removing both said rock and earth was all included in said assessment. (k) That said common council never passed any resolution declaring its intention to remove said earth, or took any proceedings whatever for the removal thereof, separate or distinct from the proceedings taken to remove said rock, as hereinbefore set forth."

By these concessions it appears that the contract was not let in accordance with the advertised proposals, which did not refer to the removal of earth, but the contract embraced a price for removing earth, the expense of which was more than $500. The resolution of the common council by which the proceedings resulting in the assessment were inaugurated makes no mention of the removal of earth. The notice of intention did not inform the taxpayers that such work was to be done, and, which is more important, the advertised proposals inviting bids to do the work gave no hint that part of the work to be done was the removal of earth. Only the removal of rock was specified in the advertisement. Earth is removed by dredging, and it is a work quite different in its character from the removal of rock. The plans and specifications provided for the removal of rock and earth, and the contract was let for the removal of rock and earth, at prices agreed on. In short, in none of the proceedings preceding the preparation of the plans and specifications was any information given to the taxpayers, contractors, or to the public, that a contract was to be let for the removal of the earth from the Buffalo river, at an expense exceeding $500, and the tax roll specified that the assessment was for the removal of rock only. This was a violation of the nineteenth section of title 9 of the charter, and invalidated

the assessment. Mutual Life Ins. Co. v. City of New York, 79 Hun, 482, 29 N. Y. Supp. 980; affirmed 144 N. Y. 495, 39 N. E. 386.

The seventh ground on which this action is sought to be maintained is not tenable. The judgment in Rumsey v. City of Buffalo was not an adjudication in rem, and conclusive on the litigants in this action, and was not competent evidence herein. In re Delancy, 52 N. Y. 80; Wilkes v. Mayor, etc., 79 N. Y. 621; Purssell v. Mayor, etc., 85 N. Y. 330; Moore v. City of Albany, 98 N. Y. 396; Chase v. Chase, 95 N. Y. 373; In re Rosenbaum, 119 N. Y. 24, 23 N. E. 172; Trimmer v. City of Rochester, 130 N. Y. 401, 29 N. E. 746.

The learned referee erred in admitting the judgment roll in evidence over the objection of the defendant, but the roll did not establish, or tend to establish, any fact in dispute in this action. Indeed none of the material facts were disputed on the trial, and the most of them were agreed upon by the written stipulation of the attorneys for the litigants; and consequently the defendant was in no wise prejudiced by the erroneous ruling of the referee in respect to the judgment roll. The exception taken to the admission of the judgment roll was the only one taken to the admission or exclusion of evidence on the trial.

The defendant excepted to the refusal of the referee to find certain facts requested, but, at the time of the submission of this action to the referee, section 1023 of the Code of Civil Procedure had been repealed, and these exceptions are unavailing. Lazarus v. Railroad Co., 83 Hun, 553, 32 N. Y. Supp. 48; affirmed 145 N. Y. 581, 40 N. E. 240. Without considering the other grounds upon which the validity of the assessment is contested, I think the assessment was illegal.

The only question remaining is whether the tax was voluntarily paid by the plaintiffs, with notice of its illegality. The evidence is entirely sufficient to warrant the conclusion that the tax was paid without knowledge or notice of the defects in the procedure by which the tax was levied. When the tax was paid the roll was in the hands of the treasurer of the city for collection, and the charter of the city provides that assessments shall remain a lien upon the land assessed for five years, and that the assessments may be enforced by a sale of the realty. Under the decisions, the tax was not voluntarily paid. Strusburgh v. Mayor, etc., 87 N. Y. 452; Purssell v. Mayor, etc., 85 N. Y. 330; Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272; Jex v. Mayor, etc., 103 N. Y. 536, 9 N. E. 39; Tripler v. City of New York, 139 N. Y. 1, 34 N. E. 729; Mutual Life Ins. Co. v. City of New York, 79 Hun, 482, 29 N. Y. Supp. 980; affirmed 144 N. Y. 494, 39 N. E. 386; Ætna Ins. Co. v. City of New York, 153 N. Y. 331, 47 N. E. 593; 25 Am. & Eng. Enc. Law, 575.

The judgment should be affirmed, with costs. All concur.