## In the Matter of the Petition of JOHN PENNIE to Vacate an Assessment.

Proceedings by the municipal authorities of the city of Albany in letting contracts under its charter for work authorized to be performed upon its streets are proceedings "relative to any assessment" within the meaning of the provision of said charter (§ 2 tit. 11, Chap. 298, Laws of 1883), authorizing the court to vacate an assessment for errors committed therein.

*It seems* that any step required by law to be taken in a proceeding which is designed to terminate in an assessment upon the property of the citizen, and which is essential to the validity of such assessment, comes within the meaning of the statute.

*In re Fulton St.* (29 How. Pr. 429) distinguished and questioned.

The omission by the board of contract and apportionment to publish one week's notice of the time and place of meetings to receive and consider bids for such a work is a " substantial error " within the meaning of the charter; the requirement is mandatory and is matter of substance.

*It seems* that any omission to comply with the substantial mandatory requirement of a statute by the authorities having jurisdiction to authorize a public improvement will vitiate an assessment made to pay for such improvement.

In proceedings to vacate an assessment for a street improvement, it appeared that the petitioner purchased the land assessed after the work had been commenced and before the assessment had been laid. The land was conveyed to him, subject to any assessment to be made for the work, and the payment of the assessment was made the principal consideration for the conveyance. *Held,* that it could not be said, as matter of law, that the petitioner was not a " party aggrieved " within the meaning of the statute; that to effect that result it is necessary that it should affirmatively appear that the legal owner cannot in any respect be injured by the assessment; that the conveyance imposed no liability upon the grantee beyond the payment of any legal assessment that might be made.

(Argued January 17, 1888; decided February 28, 1888.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made May 3, 1887, which affirmed an order of Special Term vacating, as to the petitioner, an assessment for an improvement of Second avenue in the city of Albany. (Reported below, 45 Hun, 391.)

The alleged error in the assessment was the failure of the board of contract and apportionment to give the one week's notice required by the city charter (§ 8, tit. 9, Chap. 298, Laws of 1883) of the meeting of the board to receive bids for the work.

The further material facts are stated in the opinion.

*D. Cady Herrick* for appellant. The matters set forth in the petition cannot be raised under title 2, section 11 of the city charter (Chap. 298, Laws of 1883) for the reason that said matters are not " in the proceedings relative to any assess-

ment or the proceedings to collect the same." Neither do they relate to any fraud or defect in the work. (*In re Fulton Street*, 29 How. Pr. 429; 84 N. Y. 619; *Strasburg* v. *Mayor, etc.*, 87 id. 452; *Matter of Zborowski*, 68 id. 88, 97, 98; *Stuart* v. *Palmer*, 74 id. 183; *In re De Peyster*, 80 id. 565; *Arnold's Case*, 60 id. 26; *In re Mayor, etc.*, 50 id. 507; *In re Deering*, 85 id. 11; *In re Robbins*, 82 id. 131; *Manhattan Savings Inst.*, 82 id. 142; *In re Bassford*, 50 id. 509; *In re Langes*, 85 id. 311, 312.) The building of the sewer was the exercise of one of the ordinary powers existing in all municipal corporations, and not the exercise of an extraordinary power which must be strictly pursued. The case is not one for a strict construction, but one for a reasonably liberal construction. (*Moore* v. *Mayor, etc.*, 73 N. Y. 238, 243.) A statute directing the mode of proceeding is directory merely, and is not necessary to the validity of the proceedings themselves, unless declared so by the statute. (*People* v. *Cook*, 14 Barb. 290; 8 N. Y. 67.) Where the provision of the statute is that by which jurisdiction is to be obtained it is mandatory, but where it relates to mode, form, manner or time, or is after jurisdiction has been obtained, it is directory. (*Marshall* v. *Langworthy*, 6 Hill, 646; *Striker* v. *Kelly*, 7 Hill, 9; *Doughty* v. *Hope*, 3 Denio, 251.) Here jurisdiction had been acquired. The publication of notice was an intermediate step, a violation of which does not make the whole proceeding void. (*U. S. Trust Co* v. *U. S. Fire Ins. Co.*, 18 N. Y. 199; *In re Douglass*, 46 id. 42; *In re Astor*, 50 id. 363.) It is not every violation of law or omission to comply with the directions of the statute that will render an assessment invalid. (*In re Kendall*, 85 N. Y. 302; *In re Upson*, 89 id. 67; *In re Mut. L. Ins. Co.*, 89 id. 535; *Morse* v. *City of Buffalo*, 35 Hun, 613, 614; *In re Merriam*, 84 N. Y. 668; *In re Pelton*, 85 id. 681; *In re March*, 83 id. 431, 436.) The mere fact that there have been irregularities or illegalities is not sufficient, if they do not change the assessment. (*In re Mut. L. Ins. Co.*, 89 N. Y. 530–535.) The petitioner is estopped from disputing or refusing to pay the assessment by the condition of his deed.

(*Hartley* v. *Harrison*, 24 N. Y. 70; *In re Conley*, 22 Hun, 605; *In re Gantz*, 85 N. Y. 536.)

*Alden Chester* for respondent. The petition presented to the common council asking for the improvement did not have represented upon it a sufficient amount of property fronting upon the street to give the common council jurisdiction to pass the ordinance, and all proceedings thereunder are, for that reason, void. (§ 19, tit. 6, chap. 77, Laws 1870, as amended by chap. 536, Laws 1871, p. 1134; § 29, tit. 9, charter, Chap. 298, Laws 1883, p. 387; *Springport* v. *Teutonia Savings Bank*, 84 N. Y. 403, 409; 75 id. 397, 406; *Starin* v. *Town of Genoa*, 23 id. 439, 450, 452; *Craig* v. *Town of Andes*, 93 id. 405; *Town of Ontario* v. *Hill*, 99 id. 324, 329; *Cagwin* v. *Town of Hancock*, 84 id. 532, 538, 542; Chap. 77 [§ 6, tit. 8], Laws of 1870, p. 186, as amended by Chap. 536, § 6, Laws of 1871, p. 1136; 1 R. S. 727, § 44 [7th ed.] p. 2179; *Porter* v. *Hill*, 9 Mass. 34; *Crippen* v. *Morse*, 49 N. Y. 63; *Burhans* v. *Van Zandt*, 7 id. 523; *Van Horne* v. *Fonda*, 5 John Ch. 388; *Weaver* v. *Wible*, 25 Penn. St. 270; *Lloyd* v. *Lynch*, 88 id. 419; *Graham* v. *Ludington*, 19 Hun, 246, 251 n.; *Peck* v. *Sherwood*, 56 N. Y. 615; 1 R. S. 727, § 44 [7th ed.], p. 2179; *Valentine* v. *Belden*, 20 Hun, 537; *Lochman* v. *Reilly*, 95 N. Y. 64; *Moore* v. *Moore*, 5 id. 256; *Terwilliger* v. *Brown*, 44 id. 237.) The notice of the meeting to receive bids was not sufficient under the law, and the assessment is for that reason void. (Charter, tit. 9, § 8, chap. 298, Laws 1883, p. 384.) The provision of the statute requiring notice was not directory merely, but was mandatory. (*Van Antwerp* v. *City of Albany*, Special Term, Albany county, November 14, 1885, PECKHAM, J.; *In re Douglas*, 46 N. Y. 42, 45; *In re Astor*, 50 id. 363; *In re Smith*, 52 id. 526; *In re Little*, 60 id. 343; *In re Widening Carlton street*, 16 Hun, 499, 501; affirmed, 78 N. Y. 362; *Market Nat. Bk.* v. *Pacific Nat. Bk.* 89 id. 397.) The fact that the corporation counsel certified to the regularity of all proceedings prior to the letting of the contract as required by section 4 of

chapter 458, Laws of 1881, can have no effect to prevent us from showing that such proceedings were not in fact regular. (*Van Antwerp* v. *City of Albany, supra*; *In re Manhattan Savings Institution,* 82 N. Y. 142.) A statute delegating power to charge the property of individuals with expense of local improvements must be strictly pursued, and any departure in substance from the formula prescribed by the statute vitiates proceedings under it. (*Merritt* v. *Village of Portchester,* 71 N. Y. 309; *In re Buffalo,* 78 id. 362; *Newell* v. *Wheeler,* 48 id. 486; *Westfall* v. *Preston,* 49 id. 349, 353; *Jex* v. *Mayor, etc.,* 103 id. 536, 539; *In re Manhattan R. R. Co.,* 102 id. 301, 304; *In re Schreiber,* 53 How. Pr. 359; *Appleby* v. *Mayor, etc.,* 15 id. 428; *Sharp* v. *Johnson,* 4 Hill, 92.) The clause in the deed from Mr. Hurlbut to the petitioner creates no obligation upon the latter to pay an illegal assessment, nor does it estop him from questioning its legality. (*In re Gantz,* 85 N. Y. 536; *Purssell* v. *Mayor, etc.,* 85 id. 330; *In re Burke,* 62 id. 224, 227; *State* v. *Mayor, etc.,* 35 N. J. L. 381.) The petitioner is a "party aggrieved" and a "substantial error" has been committed within the meaning of those terms as used in the statute (§ 2, tit. 11, Chap. 298, Laws of 1883), and it was not incumbent upon the petitioner to show what actual damages have resulted from the assessment. (*In re Petition of Emigrant Ind. Sav. B'k,* 75 N. Y. 388, 394–396; *In re Prot. Epis. Pub. School,* 75 id. 324, 328; *In re Walter,* 75 id. 354, 356, 358; *In re Phillips,* 60 id. 16, 21; *In re Anderson,* 60 id. 457; *In re Burke,* 62 id. 224, 227; *Merritt* v. *Village of Portchester,* 71 id. 309; *Schultz* v. *Mayor, etc.,* 103 id. 307, 310; *In re Robbins,* 82 id. 131, 142; *In re Lange,* 85 id. 307, 309.)

RUGER, Ch. J. The reasons for upholding the order vacating the assessment in question, are so fully set forth in the opinions rendered in the courts below — that it is deemed unnecessary to do more — than state the conclusions reached by this court upon the questions involved. It is

argued by the appellant that proceedings by the municipal authorities, in letting contracts for work authorized to be performed under its charter upon the streets of Albany, are not proceedings "relative to any assessment" within the meaning of section 2, title 11 of the charter (Chap. 298, Laws of 1883) authorizing the court to vacate an assessment for errors committed therein.   It is also contended that the omission by the board of contract and apportionment, to publish one week's notice of the time and place of meeting, to receive and consider bids for the work proposed to be let, does not constitute "substantial error" within the meaning of the same section. And further that the petitioner in this case was not a "party aggrieved" within the meaning of the section, inasmuch as he became the owner of the property assessed after the work had been commenced and before the assessment had been laid, under a deed which conveyed the land to him subject to any assessment to be made therefor, and by which the payment of such assessment was made the principal consideration of the conveyance.   We will consider these objections in the order of their statement.   First.  We think the error alleged was in a proceeding "relative to an assessment."   Any step which is required by law to be taken in a proceeding, which is designed to terminate in an assessment upon the property of the citizen and which is essential to the validity of such assessment, seems to us to come within the meaning of the statute.   The objects intended to be attained by the statute were a cheap, simple and speedy remedy to the citizen, for injuries suffered by him through the imposition of an illegal tax upon his property and exemption for the corporation from the delay and expense of an action in equity, which would embarrass it in the prosecution of its public improvements.  (*Matter of Burke*, 62 N. Y. 224 ; *Jex* v. *Mayor*, etc., 103 id. 536.)

The remedy provided by this act is exclusive, and all suits or actions in the nature of bills in equity, or otherwise, to vacate assessments or remove clouds upon titles created thereby, were thereafter prohibited.   (§ 3, tit. 11.)   It was the obvious inten-

tion of the act to afford a convenient substitute for the remedies theretofore provided in similar cases, and which consisted largely of actions brought to vacate assessments for irregularities in the preliminary steps, by which work was authorized to be done and assessments levied therefor.

We think no reason exists for holding that the legislature in creating a remedy against an illegal assessment intended to exclude from the benefits thereof, any errors committed in the prosecution of the work culminating in an assessment, provided they were such errors as would have been formerly held to vitiate it under any form of proceeding. Any other construction would give the act a very limited effect and deprive it largely of the beneficial operation designed for it. No reason for such a construction is advanced by the appellant, except that afforded by the provisions of section 3 of title 10, requiring the board of apportionment, to make reassessments in cases where any apportionment or assessment is set aside or vacated by the order of a competent court, and it is urged with much force that it could not have been intended that the court should exercise the power of vacating an assessment in any case, unless the board had legal authority to reassess the amount thereof. The provision for reassessments will necessarily have a large operation if applied to cases of reduction for fraud and defects in the performance of work, or of illegality in some of the items entering into it, or when the irregularity is of such a charteter as to be remediable, or occurs after the work has been lawfully performed and liability incurred, and we think that it was the intention of section 3, title 10, to limit its operation to these and like cases.

We are referred by the appellant to *Matter of Fulton St.* (29 How. Pr. 429) as an authority for the position taken. That was, however, a Special Term decision and does not seem to have been followed in any subsequent case. It involved the construction of a statute differing, so far as this question is concerned, in material respects from the one under consideration. It arose under chapter 338 of the Laws of 1858, as extended to the city of Brooklyn in 1862, and before the amendment

thereof, by chapter 312, Laws of 1874. Such proceedings at that time had not been made exclusive, and the substitute for suits in equity to correct illegal and irregular assessments. It is obvious that the learned judge in that case laid great stress upon this circumstance, for the principal reason assigned by him for his decision was the assumption that the party aggrieved had an adequate remedy by " action or *certiorari*."

It is a circumstance of great weight in the consideration of this question that among the very large number of cases in this court where the statute of 1858 has received interpretation no mention has been made of the attempted distinction between proceedings anterior to the assessment and those pertaining exclusively to it, and they have generally proceeded upon the assumption that there is no such distinction, and jurisdiction has repeatedly been exercised where the only error alleged related to proceedings anterior to those perfecting the assessments and apportionments. (*Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Matter of Smith*, 52 id. 526; *Matter of Walter*, 75 id. 354; *Matter of Douglas*, 46 id. 42; *Matter of Phillips*, 60 id. 24; *Matter of Astor*, 50 id. 363.) Many of these cases arose under the same statute considered in *Matter of Fulton St.* and were not cognizable under that statute if the appellant's present construction of the act be correct.

The cases cited above constitute but a few of those considered by this court since the enactment of the statute of 1858 and its amendments, wherein the question necessarily arose whether the law should have the restricted application claimed for it by the appellant, and the uniform construction put upon it by the courts must control us now in disposing of the question presented.

*Second.* We are also of the opinion that the meaning of the phrase " substantial error " under that statute has been definitely settled by the decisions of this court. *The Matter of Anderson* (60 N. Y. 460) was a case where an assessment was made for the cost of certain improvements authorized by a resolution of the common council of New York, which was not published as required by law. It was claimed that although the omission

to publish might constitute a "legal irregularity" within the meaning of the act of 1858, it was not a "substantial error" as prescribed by chapter 312 of the Laws of 1874 which had substituted that phrase in place of the former words. Writing in that case Judge Rapallo says: "The charter of 1857 requires the proposed resolutions to be published in all the newspapers employed, etc., and enacts that they shall not be passed or adopted until after such publication. This we have decided to be mandatory and a condition essential to the validity of the resolutions. Being so, we have no authority to dispense with the performance of any part of the condition or to determine whether or not the failure to observe it has produced actual injury in any particular case."

The same learned judge, in the case of the *Emigrant Industrial Savings Bank* (75 N. Y. 388), where certain work was performed "by days work," instead of being let by contract as required by the charter, said: "The counsel for the corporation contends that the error is innocuous because it does not appear that the expense was increased by the absence of competition and a contract. How the fact may be in this particular case it is impossible for us to say, but it is very evident that the legislature have deemed it a necessary safe-guard against fraud and abuses, which it might be difficult, if not impossible, to detect or remedy, to provide that expenditures beyond a certain amount shall not be incurred without due competition and a contract with security for its performance. A total disregard of these provisions is in law a substantial error, and it is not incumbent upon the party complaining to show what actual damage has resulted. It is sufficient that he has been deprived of the protection which the law was intended to afford."

To similar effect is the case of *Matter of Robbins* (82 N. Y. 131). Previous to the amendment of the law of 1858, effected by chapter 312 of the Laws of 1874, and when assessments were authorized to be set aside for "legal irregularity" it had been held that the omission to make publication of the resolutions and proceedings as required by law to effect a valid contract for public work, was fatal to any assessment

predicated thereon. In the *Matter of Douglas* (46 N. Y. 42), the error alleged was the omission to cause publication as required by law to be made in all papers employed by the corporation of certain resolutions, and such publication was omitted in one of such newspapers. It was held that the statute was mandatory and that a neglect to publish in any one of such papers was fatal to the validity of the assessment levied for the cost of the work done. A similar irregularity was also held fatal in *Matter of Smith* (52 N. Y. 526), and in *Matter of Phillips* (60 id. 16). Whatever effect the legislature intended by substituting the words "substantial error" in subsequent legislation for the terms "legal irregularity," as used in the act of 1858, we cannot suppose that they designed to exclude from the operation of the act, any provision intended for the benefit and protection of the citizen, and to secure him against frauds and an abuse of power.

We are of the opinion that any omission to comply with the substantial mandatory provisions of a statute by the authorities having jurisdiction to authorize a public improvement, will vitiate an assessment made to pay for such improvement. The Albany charter provides, that "for the purpose of receiving bids, the board shall meet at the office provided for it, at a time of which one week's notice * * * shall have been given in the official papers by five consecutive publications * * * of such notice therein." (Tit. 9, § 8.) It is not claimed that any such notice was given, but it affirmatively appears, that within two days after the last publication the board met and awarded the contract for the work in question. The plain object of the act was to afford ample time for intending bidders to be informed of the proposed letting, in order to induce the widest competition attainable from the publicity of the proceedings, and to secure to the taxpayers the benefit of such competition. Any material disregard of the requirements of the statute in this respect by the municipal authorities would leave open an opportunity for frauds and abuses which would substantially defeat the object of the requirement. We cannot doubt that the act was mandatory

and required a substantial performance of its requirements. which was not had in this case. Whether in this particular case the petitioner was injured or not by the omission to give the requisite notice, it is impossible to prove, but the act having assumed the necessity of a week's publication in order to secure the requisite competition, we are not at liberty to say that a taxpayer is not aggrieved by the omission, or that the requirement of the law is unreasonable or unnecessary.

*Third.* We do not think that sufficient appears in the case to authorize us to say, as matter of law, that the petitioner is not a "party aggrieved" within the meaning of the statute. To effect that result it is necessary that it should affirmatively appear that he cannot in any respect be injured by the assessment. At the time the assessment was levied he was the legal owner of the property upon which it was imposed, and his property was liable to be taken for its payment, and he was, if it was illegal, presumptively injured thereby. (*Matter of Gantz*, 85 N. Y. 538; *Matter of Burke*, 62 id. 224.)

It is obvious from the statement in his deed that he purchased the property for less than he would have been required to pay if it had not been for the impending assessment, but how much less does not appear. The assessment had not been levied at that time and its amount was uncertain and incapable of accurate computation. How much the vendor deducted from the purchase-money on account of the assessment, is not shown and it may well be that it was much less than the amount his premises were required to pay. The petitioner entered into no covenant to pay the assessment, and the language of the deed making the title subject to them imposed no liability upon him beyond the payment of such legal assessments as might be made thereon. (*Matter of Gantz, supra; Matter of Burke, supra.*)

It was said in the *Matter of Gantz* that if in fact the petitioner had been indemnified against the assessment or had assumed and agreed to pay it, or the amount thereof had been deducted from the purchase-price, it was for the corporation to show it, but that in the absence of such facts the court would

not assume that the petitioner was not aggrieved. We think that case is in point, and controls our decision upon the question under discussion.

It follows from the conclusions reached by us upon the several questions presented, that the order of the court below should be affirmed with costs.

All concur except EARL, J., not voting, and PECKHAM, J., not sitting.

Order affirmed.